SUCCESSION OF<br>NATHAN JARVIS.

trators, &c. ; and 2d, those in which some property or right of property is litigated.

On the cases of the first class, in which the parties are merely contending for the administration of the estate, the jurisprudence was during many years unsettled—not as to the basis of $300 giving jurisdiction, on which all agreed—but as to the way of fixing that basis ; thus it was contended on one side that the amount giving jurisdiction was the total value of the estate to be administered upon, while, on the other, it was contended that it was only the value of the commissions which those curators, &c., were entitled to. This uncertainty, however, was done away by the promulgation of the Code of Practice, declaring that the amount of the estate was the true basis.

Besides, it must be observed: 1st, that, in this case, the appellant is now acting in his personal capacity, the judgment *a quo* being rendered against him personally; 2d, that this case has no relation whatsoever to the appointment or removal of the executor.

*Durant & Horner*, for executor and appellant:

The claim of the appellees was less than $300—but this matter was in the nature of a *concurso*, and the whole estate exceeds $300. This court, therefore, has jurisdiction. See C. P. 1049, 1050. L. C. 1152. 8 L. R. 166. 11 L. R. 462. 3 Rob. 5. 12 Rob. 415. 2 An. 189.

BUCHANAN, J. In this case, the matter in dispute is only ninety-two dollars and seventy cents. The Article 1152 of the Civil Code is not considered to be applicable to the present case, which is an appeal from a judgment against an executor personally.

Appeal dismissed, with costs.

---

## STATE *v.* CORNELIUS BOYLE.

Unless expressly included by the statute, Sunday must be excluded when a certain number of days is allowed to a defendant in a criminal case. Therefore, under the 35th section of the Statute of 1805, which requires that a copy of the indictment and list of the jury be delivered to the prisoner at least two entire days before he shall be tried, the prisoner is entitled to two entire days exclusive of Sunday.

APPEAL from the First District Court of New Orleans, *Larue*, J.

*Morse*, Attorney General, for the State. *Haynes & Field*, for the prisoner.

OGDEN, J. The defendant was indicted for the crime of murder, and having been tried, convicted, and sentenced to death, appeals to this court for relief. The record contains a bill of exceptions to the opinion of the Judge of the court below, overruling a motion which was made for a continuance. This bill of exceptions states, " the defendant also insisted that he i ad not had sufficient legal notice of the trial of this cause, and makes the Sheriff's return a part of this bill of exceptions." The return of the Sheriff incorporated in the bill of exceptions, is his return of service on the prisoner, of a copy of the indictment and list of the jury, which by the 35th section of the Statute of 1805, it is required, should be delivered to the prisoner at least two entire days before he shall be tried. This return shows the service to have been made on the 23d of April, and the trial of the prisoner took place on the 26th of April. One of the days intervening was Sunday ; and we are called on to decide, whether the two entire days allowed to the prisoner under the statute, between

48

STATE
v.
BOYLE.

the service of the indictment and jury list, and his trial, are judicial days or exclusive of Sunday. That ground is not specially stated in the bill of exceptions, but we consider it substantially embraced in the objection made, that he had not sufficient notice of the trial, as shown by the Sheriff's return of the service of copy of the indictment and jury list. There could be no other object in the law requiring this service to be made on the prisoner, except to enable him to prepare for his defence and to ascertain the character of the jury summoned to try him. Sunday, is declared by a statute of the State to be a day of rest, and this is a recognition by law of the divine commandment to abstain from secular employment on that day. Considering the object and intention of the statute according to the prisoner two entire days from the service on him of the indictment and jury list, must have been solely to enable him to exercise within that delay, proper diligence in securing the attendance of witnesses, communicating with his counsel, and otherwise preparing for his defence, we cannot consider Sunday, which is set apart by law as a day of rest, as included within the delay thus accorded to him. In civil proceedings, our law has, in some cases, expressly declared Sunday to be included, and in others to be excluded in the delays fixed for doing certain acts. However the rule may be in civil cases, we think, unless expressly included by the statute, Sundays must be excluded, when a certain number of days is allowed to a defendant in criminal cases.

On this ground, we feel bound to reverse the judgment of the court below, and order a new trial.

Judgment reversed and cause remanded.

CAMPBELL, J., (with whom concurred BUCHANAN, J.) In this case, a copy of the indictment and a list of the jury were served on the defendant in prison on Friday, the 23d of April, 1853. He was tried on Monday, the 26th of April.

By the 35th section of the Act of 1805, it is provided that, in capital cases, a copy of the indictment and a list of the jury who are to pass on his trial, shall be delivered to him *at least two entire days*, before he shall be tried. The defendant objected to go to trial on the ground, that he had not received sufficient legal notice of the trial of the cause.

On these facts, two questions arise:

1st. Had the accused due notice of trial?

2d. Was he served with a copy of the indictment and a list of the jury at least two entire days before the trial?

I. Although there is no statute in this State, expressly requiring a notice of trial in criminal cases, it is evident that the accused cannot exercise the rights guaranteed to him by the Constitution and laws of Louisiana, without such a notice. How can he practically exercise the right given to him by the 35th section of the Act of 1805, *to produce lawful witnesses in his defence*, and to " *have process to compel his witnesses to appear on his trial*," unless he first receive notice of the time and place of trial? How can he, without such notice, enjoy the right, secured to him by the 103d Article of the Constitution, "of *being heard by himself or counsel;*" of " *meeting the witnesses face to face;*" and of having " *compulsory process for obtaining witnesses in his favor?*" Similar questions might be asked concerning other legal and constitutional provisions. These are sufficient, however, to show that the accused is entitled to have notice, that is to say, to be informed of the time and place, when and

where he is to be tried. No statute prescribes any precise form of giving this notice or information. But the Constitution and laws necessarily imply that notice of trial must be given in criminal cases.

*Nemo inauditus punitur.* It is indeed a principle pervading our free institutions, that no one is to be condemned unheard. " Whenever justice is fully and impartially administered, it must be a fundamental rule, that the party impleaded shall have due notice of when and where, and against what, he is to defend himself." This is the language of an American jurist. " Justice requires, if there be no notice, or if it be insufficient,—there having been in truth no trial—that the verdict be set aside, unless the defendant have waived it. Want of due notice therefore has been held to be a proper ground for a motion for a new trial." Graham on New Trials. And this is the law of criminal as well as of civil cases. In *Rex* v. *Bear*, 2 Salk. 646, the court says : In cases of acquittal, on indictments for libel, new trials were never allowed, unless the acquittals were procured by fraud or mal-practice. " In indictments for perjury, we never do it because the verdict is against evidence ; but *if you prove* a trick, as *no notice*, it is otherwise." So in an information in the exchequer, against *Stevens & Prall*, the court held, that each defendant, though they were partners in trade, and the charge against them was for smuggling, was entitled to a separate notice of trial, and *Prall* not having been served, the verdict was set aside, and a new trial was granted as to both defendants. 3 Price, 72.

Upon a motion for a new trial, on account of the insufficiency of the notice, the court shall inquire whether the defendant was misled or prevented from preparing his defence, or injured and deprived of any legal or constitutional right thereby ; and should grant or refuse the motion in the exercise of a sound legal discretion.

I see no reason to believe that the defendant in this case, had not due notice of trial, or was deprived of any right, unless he was not served with a copy of the indictment, and a list of the jury in due time. And this leads to examine, whether the *two entire days*, mentioned in the Statute of 1805, are to be interpreted as judicial days, exclusive of Sundays.

II. If this were *res integra*, I would unhesitatingly pronounce the two days mentioned in the statute, to mean judicial days. In general, when a certain number of days is allowed for pleading, &c., Sundays are reckoned the same as other days, in England and in the United States. But it would be an error to suppose that Sunday is *dies non juridicus*, only for matters to be transacted in court. The maxim is, *dies dominicus non est juridicus*. The Lord's day is not the law's day. " Sunday is not a day for judicial proceedings or legal purposes." Broom's maxims. Service of a summons on a Sunday is void— no arrest can be made, or process served on a Sunday, except for treason, felony or breach of the peace. Service of a declaration or of a rule of court must not be made on that day ; nor can an attachment be put in force, or an execution be executed then. Broom 19. Coke says: the Sabbath day is not *dies juridicus*, for that ought to be consecrated to divine service. Sunday is, by the laws of Louisiana, a day of rest. A judgment by default may be made final, after the lapse of three days, said the C. P. a. 312. This meant, said this court, three judicial days, excluding Sunday, on which day the court cannot hold its sessions. The same interpretation was given to a similar provision in the Statute of 1805. 7 M. R. 360. So the days allowed for moving for a new trial, by the Act of 1805, c. 16, were judicial days, according to the deci-

sion in 1 M. 20. Still, as a general rule, Sundays are reckoned among the days granted for pleading, &c., in England and the United States, according to the common law.

But the common law did not require a copy of the indictment or a list of the jury who were to try them, to be delivered to persons accused of capital offences. In process of time, however, statutes were passed regulating trials for treason ; by the provisions of which, persons accused of treason were entitled to a copy of the indictment, five days at least, and a list of the jury who were to try them, two days at least before their trial. St. 7 Will. 3, c. 3. St. 7 Ann., ch. 31, s. 10. It appears, according to the discourse of Foster, that, on the several trials for treason in Surry, in 1746, the accused were served with copies of their indictments five days before their arraignment, exclusive of the day of arraignment, the day of service, and the intervening Sunday— "*Sunday not being a day on which prisoners may be presumed to be advising with counsel, and preparing for their defence*"—that the same course was adopted in a commission which sat in the North, in the summer of that year ; and that a similar course had been previously pursued upon a commission in 1715. Sunday was excluded, he adds, *ex majori cautelâ* and in favor of life— and not of absolute necessity, though it is best to follow precedents if time will allow it. "It was done for greater caution, and to obviate all objections; but the statute doth not require it." Whatever may have been the grounds on which this practical interpretation of the English statute was based, it is certain, that under the well settled practice of the courts in England, Sunday is not included in the five days allowed, by the statute, to the accused to prepare for their defence.

This is expressly so stated by East., vol. 1, p. 112. Chitty says : "By general practice too, the time, at least with respect to the copy of the indictment, is reckoned exclusive of Sunday, as that is a day on which it will not be presumed that the prisoner is preparing for his defence, though this indulgence is not given by the statute." And, in a note, he adds : "It is said in Lord Erskine's speech on the trial of *Hadfield*, that a defendant had fifteen days before trial." 1 Chitty, 405 and note m.

Taking it then to be established, that the practice in England, excluded Sundays from the five days granted the accused in cases of treason by statute, to prepare a defence ; it would seem clear that our Legislature intended to exclude Sundays from the two days granted the accused in capital cases by the Statute of 1805, to prepare their defence. For, upon a close examination and comparison of these statutes, it is manifest that the provisions and the language of our Act of 1805, are mainly borrowed from the English statute, with this difference however : The English statute granted a delay of five days at least, between the delivery of the indictment and the trial, while our statute grants a delay of two days at least; and the English statute confined the right to receive a copy of the indictment to cases of treason, while our statute extends the right to all capital cases. In borrowing the provisions and language of the English statute, our Legislature doubtless intended that they should be understood and interpreted according to the settled construction and practice o the Court of King's Bench in England.

And this view is strengthened by a consideration of the inconvenience and evils which would result from any other construction. The delay between the delivery of the indictment and the trial of the accused, needs not be more than

two entire days.  Now, suppose the 8th of January, Christmas, or any other
served in prison on Friday afternoon, with a copy of the indictment and a list
of the jury who are to try him on the following Monday.  The courts and the
public offices will be closed on Saturday, and he will be unable to procure sub-
poenas to compel his witnesses to attend his trial, or if he procure them, to
have them served; he will be in the same situation on Sunday.  If the two
days granted him by the Statute of 1805, do not mean judicial days, he may
be forced into a trial on Monday, without having an opportunity of summoning
his witnesses, or preparing his defence.  And yet the Constitution expressly
declares, "*he shall have compulsory process for obtaining witnesses in his fa-
. vor.*"  He might thus be deprived of the right of defence under our free
American institutions.

The object of the Legislature was solely to enable the accused to prepare
fully for his defence, by exercising, within the two days allowed him, his right
of communicating with his counsel, securing the attendance of witnesses, and
taking other steps for his defence.  The time allowed for this purpose is, at
best, very short; to make it shorter by judicial construction, is to obstruct, if
not to defeat the object of the laws.  To decide that the two days do not mean
judicial days, would, in the case supposed, annihilate, for the practical and sub-
stantial purpose of defence, the time, and amount to a repeal of the statute.
Surely, "the great inconvenience which might result from such a construction,
affords fair grounds for supposing that it could not be what was contemplated
by the Legislature, and warrants the court in looking for some other interpre-
tation."  1] M. & W. 928.  10 M. & W. 434.  *Argumentum ab inconvenienti,
plurimum valet in lege.*

For these reasons, I would unhesitatingly, if this were *res integra*, declare
that the two days mentioned in the statute, mean judicial days, and are exclu-
sive of Sundays, and that the defendant is entitled to a new trial.

It having been strenuously urged in argument that the uniform practice in
this State, since the adopting of the Act of 1805, has been to include in the
count an intervening Sunday, the majority of the court long doubted the pro-
priety of disturbing what seemed the established practice.  Though we re-
garded this practice as dangerous and fraught with mischief, it was considered
not inconsistent with the terms of the statute, when construed by the English
authorities alone referred to, and were therefore disposed, though with reluc-
tance, to yield to what was deemed established usage, the force of authority.

That the practice in the criminal court of this district has been as is stated,
is no doubt true; and in confirmation of this, one of my brethren called our
attention to other records on our files, in which an intervening Sunday was in-
cluded as other days; though it is proper here to state, that in those cases the
prisoner did not urge this as a reason why he should not be put upon his trial.

We have likewise been advised by another of our brothers, who was long
engaged in the practice and upon the bench in a country district, that in the
courts over which he presided, the invariable rule was, to exclude Sunday in
the count.  In other parts of the State, the practice, it is believed, has been
different.

It is important in so grave a matter, involving as it does the rights and even
the life of the citizen, that a uniform practice in this respect should obtain
throughout the entire State; and believing that ths rule as settled by the

English courts, is more in conformity with the Constitution, laws and policy of our State, and better calculated to promote the ends of justice than that under which the Court of the First District, and other of our courts, have acted, I am of opinion that the practice of those courts should not be sanctioned, but that the rule of the English courts should govern and be enforced in all the courts of the State having criminal jurisdiction, and this is the unanimous opinion of the court.